

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLOBAL GOSPEL MUSIC GROUP LLC and
ISAIAH D. THOMAS

                      Plaintiffs,

      -against-

HABUKKUK MUSIC, INC. and
APRIL WASHINGTON-ESSEX,

                      Defendants.

MEMORANDUM DECISION
AND ORDER
10 Civ. 01818 (GBD)

---

GEORGE B. DANIELS, District Judge:

Plaintiffs Global Gospel Music Group LLC and Isaiah D. Thomas bring this complaint against Defendants Habukkuk Music, Inc., and April Washington-Essex ("Essex").[1] Plaintiffs assert the following claims against all Defendants: (1) failure to pay federal statutory mechanical royalties; (2) unjust enrichment; (3) fraud; (4) interference with contractual and business relations; (5) violation of Federal and State of New York Unfair Trade Practice laws. Plaintiffs also assert a claim for (6) breach of contract against Habukkuk and (7) seek preliminary and permanent injunctions against all Defendants. Defendants move to dismiss the Complaint on three grounds: lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Plaintiffs cross-move for sanctions.

---

[1] Both Habukkuk and Washington-Essex are out-of-state defendants. Habukkuk is a corporation duly organized and existing under the laws of the State of Maryland. Complaint ¶ 6. Washington-Essex is a resident of the State of Maryland. Id. ¶ 6.

## BACKGROUND

On or about November 2007, Thomas and Habukkuk entered into an exclusive recording contract governed by New York law. Complaint ¶ 8; Declaration of Mark S. Frey, Ex. A. Pursuant to the contract, the masters for Thomas' album "The Greatest" were delivered to Habukkuk, and the album was released for sale on March 25, 2008. Id. ¶ 10. On or about February 2009 to March 2009, Thomas decided to begin making his second recording. Id. at 11. Thomas, Habukkuk and Washington-Essex engaged in the process of beginning the recordings. Id. Plaintiffs allege that Habukkuk and Washington-Essex attended rehearsals and were engaged by Thomas in the choosing of selections of music, but that Thomas and his agents created all the music and paid for the creation of the music in every aspect. Id. On April 27, 2009, Habukkuk declined to exercise the option for the second album. Id. ¶ 13. Washington-Essex told Thomas that the $30,000 advance for the second album would not be paid. Id. ¶ 15.

Plaintiffs allege that Habukkuk engaged in various conduct from March 2008 to December 2009 that materially breached the recording contract. Id. ¶¶ 16-41. Habukkuk failed to pay expenses sustained by Thomas. Id. ¶ 19. Habukkuk withheld monies from Thomas's royalties for reserves, which, upon information and belief, Habukkuk utilized to cover losses associated with various other artists. Id. ¶ 20. Habukkuk never paid Thomas any mechanical royalties. Id. ¶ 24. Habukkuk reported sales figures for "The Greatest" different than the Soundscan Reports. Id. ¶¶ 25-30.

In February 2010, Global Gospel began to promote the first single on Thomas's new album. Id. ¶ 33. On or about February 15, 2010, Habukkuk prepared and provided to media outlets in New York and across the country a press release with the headline "Habakkuk Music Inc. Issues Notice of Injunction Against Isaiah D. Thomas and Global Gospel Music Group." Id.

¶ 34. Plaintiffs allege that the statement was untrue because no injunction of any kind had been approved by any court. Id. ¶ 35. Also, Habukkuk and Washington-Essex telephoned several radio stations and stated that a cease and desist letter would be served if they continued to play Thomas's new single. Id. ¶ 37. Plaintiffs allege that this damaged Thomas's ability to have his new single played on the New York State affiliates of the radio stations contacted, and hurt him financially. Id. ¶ 37, 39. On March 2, 2010, Habukkuk and Essex issued another press release. Id. ¶ 41. This communication stated that Habukkuk was "Seeking a Temporary Injunction." Id.

## STANDARD OF REVIEW

To withstand a 12(b)(2) motion to dismiss, a plaintiff bears the burden of showing that the court has jurisdiction over the defendant. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). Where no evidentiary hearing has been held, nor have the parties engaged in jurisdictional discovery, a plaintiff need only make a prima facie showing that jurisdiction exists. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985). Such a showing may be demonstrated on the basis of legally sufficient allegations of jurisdiction alone. In re Magnetic Audiotape, 334 F.3d at 206. The court is to accept all averments of jurisdictional facts as true, and construe the pleadings and affidavits in plaintiffs' favor. See id.; PDK Labs, Inc. V. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

To determine whether personal jurisdiction exists over a nonresident defendant, a federal court must look to the forum state's general jurisdictional or long-arm statute.[2] See Savin v. Ranier, 898 F.2d 304 (2d Cir. 1990) (citing Arrowsmith v. United Press Intern., 320 F.2d 219, 222-25 (2d Cir. 1963) (en banc)); Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1155 (S.D.N.Y. 1996). Thus, this Court must determine whether New York state law provides a basis to assert personal jurisdiction over Habukkuk and Washington-Essex, individually. If so, the Court must then determine whether the exercise of jurisdiction would comport with constitutional principles of due process. See Saudi v. Marine Atlantic. Ltd., 306 Fed.Appx. 653, 654 (2d Cir. 2009) (citing Best Van Lines Inc. v. Walker, 490 F.3d 239, 243-44 (2d Cir. 2007)).

## A.  General Jurisdiction

Under New York law, a court may exercise general jurisdiction over a nonresident defendant if the individual or entity "(1) is physically present in New York when served with process, Rawstorne v. Maguire, 265 N.Y. 204 (N.Y. 1934); (2) consents to jurisdiction in New York, CV Holdings, LLC v. Bernard Tech., Inc., 788 N.Y.S.2d 445, 446 (3d Dep't 2005); or (3) 'has engaged in such a continuous and systematic course of doing business here that a finding of its presence in this jurisdiction is warranted,' Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 565 N.E.2d 488, 490 (N.Y. 1990) (internal quotation marks omitted)." Bucephalus

---

[2] "Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." Export-Import Bank of the United States v. Hi-Films S.A. de C.V., 2010 U.S. Dist. LEXIS 100927 (S.D.N.Y. Sept. 24, 2010) (collecting cases). Here, there is no such agreement. The recording contract between Habukkuk and Plaintiffs provides that: "This agreement and its validity, construction and performance shall be governed by the laws of the State of New York." Fey Declaration, Ex. B, at ¶ 24(b). This is a choice of law clause, and therefore Habukkuk did not consent to personal jurisdiction in New York.

Alternative Energy Group, LLC v. KCR Dev., 2009 U.S. Dist. LEXIS 120950, at *7 (S.D.N.Y. Dec. 22, 2009); see also NY CLS CPLR § 301.

A defendant is "present in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (internal quotation marks, citations, and alteration omitted); see also RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 400 (S.D.N.Y. 2009) ("An individual cannot be subject to jurisdiction under CPLR. § 301 unless he is doing business in New York on his own behalf rather than on behalf of a corporation.") (citing Brinkmann v. Adrian Carriers, Inc., 815 N.Y.S.2d 196, 199 (App. Div. 2006)). The following factors are generally considered to determine if a defendant has engaged in continuous, permanent, or substantial activity: "whether the company has an office in the state, whether it has any bank account or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals located in the state to promote its interests." Id. at 98.

Plaintiffs have not satisfied the requirements for general jurisdiction over Washington-Essex. Washington-Essex is a nonresident. She was personally served in Maryland. She did not consent to jurisdiction in New York. Finally, there are no allegations that she ever individually engaged in business activities in New York.

Additionally, Plaintiffs have not satisfied the requirements for general jurisdiction over Habukkuk. Habukkuk is incorporated in and has its principal place of business in Maryland. It

was served in Maryland. It has not designated an agent to accept service of process in New York, or otherwise consented to jurisdiction in New York.

Finally, Habukkuk lacks continuous and systematic business activity in New York. Plaintiffs have not alleged that Habukkuk has a physical presence, operates any facilities, or owns any property in New York. Plaintiffs also have not alleged that Habukkuk is registered or licensed to do business in New York. The activities identified by Plaintiff – Habukkuk's nationwide distribution contract with a subsidiary of Universal Music Group, sales in New York, and advertising in New York – constitute "mere solicitation" and are thus insufficient absent other significant contacts.[3] Similarly, Habukkuk's use of a website operated by a third-party is also insufficient.[4]

Accordingly, neither Washington-Essex nor Habukkuk is subject to general jurisdiction in New York.

---

[3] See Chic Org., Ltd. v. Motown Records Corp., No. 82 Civ. 3456, 1983 U.S. Dist. LEXIS 19425 (S.D.N.Y. February 8, 1983) (holding that a music company with a nationwide distribution contract through non-exclusive distributors is not subject to general jurisdiction based solely on its music being marketed and sold in a foreign district, despite several million dollars worth of music being sold in New York, nationwide promotional efforts, and promotional activities for business solicitation in New York).

[4] See Gosain v. State Bank of India, 689 F. Supp. 2d 571, 583 (S.D.N.Y. 2010) ("As this Court has repeatedly held, a defendant's website alone cannot form the basis for general jurisdiction in New York because the fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301.") (quoting In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 2003 WL 22909153, at *3 (S.D.N.Y. Dec. 9, 2003)); Allojet PLC v. Vantage Associates, 2005 WL 612848, at *4-5 (S.D.N.Y. Mar. 15, 2005) (noting that extent to which a website does business over the internet is relevant to specific jurisdiction but concluding that "while a defendant's use of an interactive website, standing alone, may support a finding of specific jurisdiction, it generally will not confer general jurisdiction over a defendant") (citations omitted).


**B.    Specific Jurisdiction**

Pursuant to the New York "Long Arm" Statute, CPLR § 302, a court may exercise specific jurisdiction over a non-domiciliary or foreign corporation for a cause of action arising from sufficient contacts with New York. Plaintiffs allege that sections 302(a)(1) and 302(a)(2) provide for jurisdiction over both Defendants.

*1.    Section 302(a)(1)*

Section 302(a)(1) provides for specific jurisdiction over a non-domiciliary defendant where "two requirements [are] met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Sole Resort. S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006); see also N.Y. CPLR. § 302(a)(1). At the core of CPLR § 302(a)(1) is the requirement that a defendant "*purposely avails himself* of the privilege of conducting activities within New York, thus invoking the benefits and protections of New York's laws." Grand River Enterprises Six Nations v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005) (citations and alterations omitted) (emphasis in the original). A cause of action is deemed to "arise" from the non-domiciliary's business transaction when "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Van, 490 F.3d at 246 (internal quotation marks omitted) (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)). Where the relationship between the claim and the transaction is too attenuated or their connection is merely coincidental, jurisdiction will be lacking. See Sole Resort, 450 F.3d at 103; Johnson v. Ward, 4 N.Y.3d 516, 829 N.E.2d 1201, 1203, 797 N.Y.S.2d 33 (N.Y. 2005).

Here, section 302(a)(1) is inapplicable. Plaintiffs argue that Defendants engaged in three types of activities in New York that provide a sufficient basis for specific jurisdiction: advertising, sales, and retaining New York counsel to negotiate and draft Thomas's recording contract. None of Defendants' alleged activities constitute sufficient business activities in New York. Advertising or mere solicitation is not considered transacting business.[5] Sales through a third-party commercial website[6] and/or a nationwide distributor[7] do not involve purposeful availment. Plaintiffs never allege any facts to "convince the court that . . . [defendants] exercised some control over [the third parties] in the [New York sales transactions]."[8]

---

[5] "[M]ere solicitation of business within the state does not constitute the transaction of business within the state" absent some other New York-directed activities." O'Brien v. Hackensack Univ. Medical Ctr., 305 A.D.2d 199, 201 (1st Dep't 2003); see also Davidson Extrusions, Inc. v. Touche Ross & Co., 131 A.D.2d 421, 423-24 (2d Dep't 1987) (holding placement of advertisement in national publication not sufficient to constitute transaction of business within state). In fact, "[a]dvertising – even advertising directed at New York residents – is not enough." Virgin Enterprises Ltd. v. Virgin Eyes LAC, 2009 U.S. Dist. LEXIS 97280, at *4 (S.D.N.Y. Sep. 30, 2009) (citing Maranga v. Vira, 386 F. Supp. 2d 299, 308 (S.D.N.Y. 2005)).

[6] Cf. cases declining to find purposeful availment when a defendant-operated website linked to other sites to sell goods, such as Rescuecom Corp. v. Hyams, 477 F. Supp. 2d 522, 529 (N.D.N.Y 2006); and Novak v. Overture Servs., 309 F. Supp. 2d 446 (E.D.N.Y. 2004).

[7] See, e.g., Stephan v. Babysport, LLC, 499 F. Supp. 2d 279 (E.D.N.Y. 2007) ("As to the sales by local Seven Eleven stores, such sales arise out of the sale of Babysport products, not to Seven Eleven, but from Babysport in Texas, to MacLane, a Texas corporation. MacLane thereafter distributed the product to its warehouses throughout the country for sale in stores such as Seven Eleven. . . . While Babysport may have been aware that its products were later distributed by MacLane throughout the United States, such knowledge constitutes neither knowledge of the products' ultimate destination nor purposeful availment of the protection of New York law.).

[8] Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (N.Y. 1988) (citing Lupton Assocs. v Northeast Plastics, 105 AD2d 3, 7; Cato Show Print. Co. v Lee, 84 AD2d 947, 949, appeal dismissed 56 NY2d 953; East N. Y. Sav. Bank v Republic Realty Mtge. Corp., 61 AD2d

Finally, hiring local counsel cannot be relied upon for asserting jurisdiction in the instant lawsuit in the absence of allegations that Defendants' counsel conducted business *in New York* as Defendants' agent.[9] See PDK Labs v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997); Barclays American/Business Credit, Inc. v. Boulware, 151 A.D.2d 330 (1st Dep't 1989); see also Flemming, Zulak & Williamson, LLP, 2004 U.S. Dist. LEXIS 22448, at * 1 ("A non-resident who retains local counsel in New York has transacted business in the state" when the attorney seeks to sue the client) (citing Elman v. Belson, 32 A.D.2d 422, 425-26(2d Dep't 1969)).

Furthermore, none of Defendants' alleged business contacts bears an articulable nexus to any of Plaintiffs' claims. Plaintiffs assert several claims against Defendants for failing to pay royalties. However, Thomas's entitlement to royalties was governed by the recording contract, which was executed and performed by Defendants in Maryland.

Plaintiffs assert a fraud claim accusing Defendants of underreporting sales figures. However, there are no facts to suggest that Defendants' contacts with New York are relevant to whether Defendants manipulated the sales figures and provided Thomas with false statements.[10] Plaintiffs also never allege that they are seeking relief only, or even primarily, for New York sales. Even if that were the case, Defendants' contacts would be irrelevant because Defendants' conduct in Maryland – not any sale in New York – is the source of the cause of action.

---

1001, 1002; CutCo Indus. v Naughton, 806 F2d 361, 366)).

[9] Plaintiffs never allege that Thomas's recording contract was negotiated or executed in New York or that Defendants' New York counsel engaged in communications or other business activities relevant to the present dispute *in New York*.

[10] Here, advertising is clearly irrelevant.

9

Finally, Plaintiffs assert several claims for providing false information to the public and contacting radio shows to stop playing Thomas's music.[11] Plaintiffs' claims are not based on Defendants' conduct in, or contacts with, New York. Therefore, Plaintiffs have not made a prima case pursuant to section 302(a)(1) for specific jurisdiction.

### 2.  *Section 302(a)(2)*

Plaintiffs argue that section 302(a)(2) provides for specific jurisdiction with respect to the claims for fraud and tortious interference with business relations. Section 302(a)(2) provides for jurisdiction where a defendant "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." CPRL § 302(a)(2). "To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State."[12] See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 29 (2d Cir. N.Y. 1997) (citing Carlson v. Cuevas, 932 F. Supp. 76, 80 (S.D.N.Y. 1996)); see also Platt Corp. v. Platt, 17 N.Y.2d 234, 237 (1966) ("The failure of a man to do anything at all when he is physically in one State is not an 'act' done or 'committed' in another State. His decision not to act and his not acting are both personal events occurring in the physical situs. That they may have consequences elsewhere does not alter their personal localization as acts.");

---

[11] Here, New York sales is clearly irrelevant.

[12] Contrary to Plaintiffs' assertions, it is well-established law that the location of Defendants' allegedly tortious act is critical to jurisdiction pursuant to section 302(a)(2), not the location of the harm or the location of the persons contacted. See DirecTV Latin Am., LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) ("[C]ourts applying New York law have declined to extend jurisdiction over defendants simply on the basis of telephone calls and other communications sent to New York.") (collecting cases)/

10

Feathers v. McLucas, 15 N.Y.2d 443, 458 (1965) ("[I]t is our conclusion, based not only on the plain language of the statute but on its legislative history, that paragraph 2 of subdivision (a) of section 302 covers only a tortious act committed (by a nondomiciliary) in this State. Any plea for further expansion of its scope, however desirable such expansion may seem, is a matter for the Legislature rather than the courts.").

Here, section 302(a)(2) is inapplicable. Defendants allegedly committed civil fraud by preparing false Soundscan reports and providing them to Thomas. Defendants also allegedly committed tortious interference with Plaintiffs' business relations by distributing an allegedly false press release and telephoning radio stations to demand that they stop playing Thomas's music. Plaintiffs never allege in the Complaint, however, that any of Defendants' acts occurred in New York. Nor do Plaintiffs allege in the Complaint that either Defendant was ever physically present in New York.[13] Plaintiffs thus failed to demonstrate that an allegedly tortious act occurred anywhere but at Habukkuk's headquarters, which was in Maryland. Therefore, Plaintiffs have not made a prima case pursuant to section 302(a)(2) for specific jurisdiction.

Accordingly, Plaintiffs have failed to identify a legal basis for this Court to exercise

---

[13] At oral argument, Defendants alleged for the first time that some of Washington-Essex's contact with radio stations occurred in person and thus while she was physically present in New York. The Court requested an affidavit in support of the allegation: "If all of this activity takes place in Maryland and there is no good-faith basis to allege that any of this activity by Ms. Washington-Essex that you are saying is actionable took place in New York, then I think Mr. Frey has a legitimate argument. I'd have to look at it differently if you have a good-faith basis to state that you're aware of certain meetings that she had in New York with certain companies or representatives and in those meetings that you say that she took action which you claim caused injury to your client." Transcript at 38. After having been provided the requested opportunity to submit a further affidavit or other evidence, Plaintiffs never provided the Court with the affidavit.

personal jurisdiction over either Defendant. The Court need not address the remaining grounds for dismissal.

## CONCLUSION

Defendants' motion to dismiss is GRANTED. Plaintiffs' Complaint is dismissed.

Dated: New York, New York
December 6, 2010

SO ORDERED:

*[signature]*
GEORGE B. DANIELS
United States District Judge